# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

---

**UNITED STATES OF AMERICA**
             **Plaintiff,**

             **v.**                                                    **Case No. 06-CR-24**

**WALTER CHAMULAK**
             **Defendant.**

---

### SENTENCING MEMORANDUM

The government charged defendant Walter Chamulak with two counts of cocaine distribution contrary to 21 U.S.C. §§ 841(a)(1) & (b)(1)(C). Defendant pleaded guilty to both counts, and the probation office prepared a pre-sentence report ("PSR") in anticipation of sentencing. Without objection, the PSR set defendant's base offense level at 18, U.S.S.G. § 2D1.1(c)(11), then subtracted 3 for acceptance of responsibility, § 3E1.1. Coupled with his criminal history category of VI, the PSR recommended an imprisonment range of 41-51 months under the advisory sentencing guidelines.

The government moved for a sentence reduction under U.S.S.G. § 5K1.1 to reward defendant for his substantial assistance in the prosecution of others, and defendant moved for a horizontal departure from his criminal history category under § 4A1.3. I granted both requests and imposed a sentence of 18 months' imprisonment. In this memorandum, I provide written reasons for the sentence imposed.

## I.  BACKGROUND

On July 10, 2002, defendant told two ounces of cocaine to an undercover officer, and on July 23, 2002, sold another four ounces to the same officer. Defendant was

arrested several days later and found to be in possession of one ounce of cocaine, some marijuana and thirteen ecstasy pills. Defendant immediately agreed to cooperate and worked undercover for a period of time. In 2004, he was arrested by state authorities and later sentenced to prison for drunk driving and bail jumping. While he was serving his state sentence, the government obtained an indictment charging defendant with the 2002 cocaine sales. As a result of the federal indictment, the state Department of Corrections removed defendant from the substance abuse treatment program in which he had been participating and transferred him to a medium security facility. This prevented defendant from possibly obtaining a sentence reduction under the state's challenge incarceration program. See Wis. Stat. § 302.045. Had he completed the state program, he would have been released shortly before the sentencing in the instant case rather than remaining confined in state prison until September 2007.

As noted, the government requested a sentence reduction based on defendant's cooperation, and defendant sought a horizontal departure from criminal history category VI to category III. Defendant further requested that I consider the effect of the timing of the federal indictment on his state sentence and run the instant sentence concurrently with that term. The government did not oppose defendant's requests.

## II. DISCUSSION

### A. Sentencing Procedure

In imposing sentence, I follow a three-step procedure. First, I determine the advisory sentencing guideline range. Second, I decide whether to grant any departures pursuant to the Sentencing Commission's policy statements. Finally, I select a sentence

2

that is sufficient but not greater than necessary given all of the factors set forth in 18 U.S.C. § 3553(a). E.g., United States v. Cull, 446 F. Supp. 2d 961, 962 (E.D. Wis. 2006).

**B.    Application**

**1.    Guidelines**

The parties agreed with the guideline calculations in the PSR: offense level 15, criminal history category VI, and 41-51 months imprisonment. I therefore proceeded to address the departure motions.

**2.    Departures**

**a.    Government's § 5K1.1 Motion**

The government moved for a sentence reduction under U.S.S.G. § 5K1.1 based on substantial assistance. In ruling on such a motion, I consider:

> (1) . . . the significance and usefulness of the defendant's assistance, taking into consideration the government's evaluation of the assistance rendered;
>
> (2) the truthfulness, completeness, and reliability of any information or testimony provided by the defendant;
>
> (3) the nature and extent of the defendant's assistance;
>
> (4) any injury suffered, or any danger or risk of injury to the defendant or his family resulting from his assistance;
>
> (5) the timeliness of the defendant's assistance.

U.S.S.G. § 5K1.1(a).

I give substantial weight to the government's evaluation of the extent of the defendant's assistance, U.S.S.G. § 5K1.1 cmt. n.3, but the extent of the departure is within my discretion. In attempting to quantify and link the departure to the structure of the guidelines, I use the method suggested by the Seventh Circuit of granting something on

3

the order of a 2-level adjustment for each factor found to be fully present, with a lesser reduction for those factors partially present.  See United States v. Washington, 293 F. Supp. 2d 930, 934 (E.D. Wis. 2003).

According to the government's motion, defendant debriefed and provided information on his supplier, Anthony Anderson, and identified Anderson's source, Joseph Crivello.  He also provided information on his customers.  Defendant further agreed to wear a wire and introduced an agent to Anderson, and the agent then made a four ounce buy from Anderson, during which agents were able to identify Anderson's supplier.  Based on defendant's cooperation, Anderson and his supplier were arrested and charged, along with five others.  Anderson pled guilty and received a 57 month sentence, and his supplier received a 120 month sentence.  Defendant also cooperated with the West Allis police department, and on July 27, 2002, made a controlled buy of 27 grams of cocaine from Nicholas Forsell, and a second buy of 29 grams of August 8, 2002, both while wearing a wire.  As a result of these buys, West Allis police executed a warrant and seized cocaine, ecstasy, marijuana and cash.  Forsell was later charged in state court and pled guilty.  Because defendant's cooperation was significant and useful in obtaining multiple convictions, I awarded 2 levels under the first § 5K1.1 factor.

I awarded 1 level under the second factor, based on the government's statement that defendant had at all times been truthful.  However, there was no evidence as to how complete the information was, and it appeared that additional investigation followed defendant's debriefs.

I awarded 2 levels under the third factor because defendant did more than simply debrief.  He engaged in pro-active cooperation, made buys and wore a wire.  I awarded no

4

reduction under the fourth factor because there was no evidence of injury or specific risk. Finally, I awarded 1 level under the final factor, as the government indicated that defendant agreed to cooperate immediately upon being arrested; however, there was no indication that the timeliness was particularly significant meriting a greater reduction. Therefore, I reduced defendant's offense level by a total of 6 based on his cooperation.

### b.    Defendant's § 4A1.3 Motion

Defendant moved for a departure from criminal history category VI to category III under § 4A1.3. He noted that his criminal history points came from six drunk driving offenses, an escape which involved him returning late to the work release facility in which he was confined, and a bail jumping offense arising out of a new drunk driving charge he picked up while he was on bond on a previous drunk driving charge.

Section 4A1.3 provides for a horizontal departure where reliable information indicates that the defendant's criminal history category substantially over-represents either the seriousness of the defendant's criminal history or the likelihood that he will commit other crimes. U.S.S.G. § 4A1.3(b)(1). I have identified various relevant factors in ruling on such a motion, including the age of the prior offenses; the defendant's age at the time he committed them; whether the prior offenses were committed while the defendant was under the influence of drugs or alcohol; the circumstances of the defendant's prior convictions, i.e. whether they were petty or non-violent; the length of the prior sentences; what was going on in the defendant's life at the time he committed the prior offenses; and the closeness in time of the prior offenses, i.e. whether they were they part of one "spree." United States v. Eisinger, 321 F. Supp. 2d 997, 1006 (E.D. Wis. 2004).

5

In the present case, I found that category VI substantially over-represented the seriousness of defendant's record. I first noted that the drunk driving offense detailed in ¶ 46 of the PSR was undated and based on records which had been purged. Therefore, I was reluctant to place weight on it. Second, I noted that the drunk driving offense listed in ¶ 38 counted for 2 points, rather than 3 as stated in the PSR, as the sentence was 13 months and thus did not <u>exceed</u> one year and one month as § 4A1.1(a) requires. Therefore, I considered defendant to have a total of 15 points rather than 17, still enough to place him in category VI, but not far over the limit for that category.

Looking at defendant's record, I did not see the typical category VI offender. First, all but two of the scored offenses were drunk driving cases. While the Sentencing Commission has decided that drunk driving cases score points, courts have held that the inclusion of such offenses may in some cases result in overstatement. <u>United States v. Hammond</u>, 240 F. Supp. 2d 872, 881 (E.D. Wis. 2003) (citing <u>United States v. Brown</u>, 985 F.2d 478, 482 (9th Cir. 1993); <u>United States v. Miranda</u>, 979 F. Supp. 1040, 1043-44 (D.N.J. 1997); <u>United States v. Anderson</u>, 955 F. Supp. 935, 937 (N.D. Ill. 1997)). Drunk driving is no doubt a serious crime, but as one that contains no mens rea element it can be distinguished from other felonies. <u>See generally</u> <u>Leocal v. Ashcroft</u>, 543 U.S. 1 (2004).

Second, defendant's two non-drunk driving cases were not suggestive of a category VI offender. The escape conviction involved defendant returning several hours late to the Huber facility where he was confined, and the bail jumping occurred when he picked up a new drunk driving charge while released on bail. Neither suggested significant and serious criminality.

6

Third, none of defendant's previous sentences exceeded 18 months' imprisonment, which suggested that the sentencing courts did not consider his prior offenses aggravated. And, unlike most category VI offenders, he had just one 3 point offense.

Finally, all of defendant's offenses stemmed from a serious substance abuse problem, which, according to the PSR and the treatment letters attached thereto, defendant had taken steps to address. It was too soon to tell whether defendant had done so successfully, but he had made great efforts to combat his alcoholism. And, the effect of substance abuse in contributing to these offenses distinguished defendant from one who committed crimes with a clearer state of mind.

For all of these reasons, I departed to category V. I concluded that any further departure would depreciate the undoubted seriousness of defendant's record.

Defendant's guideline range after the departures was 18-24 months, and I turned finally to the imposition of sentence under § 3553(a).

### 3. Section 3553(a)

In imposing sentence, the court must consider the factors set forth in § 3553(a), which include:

(1)    the nature and circumstances of the offense and the history and characteristics of the defendant;

(2)    the need for the sentence imposed–

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

7

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3)     the kinds of sentences available;

(4)     the advisory guideline range;

(5)     any pertinent policy statements issued by the Sentencing Commission;

(6)     the need to avoid unwarranted sentence disparities; and

(7)     the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a). The statute directs the court, after considering these factors, to impose a sentence sufficient but not greater than necessary to satisfy the purposes of sentencing set forth in sub-section (a)(2).

### a.     Nature of Offense

Defendant made sales of two ounces and four ounces of cocaine to an undercover agent. Upon his arrest, defendant was found to be in possession of another ounce of cocaine, some marijuana and ecstasy pills. There was no evidence of weapon possession, violence or threats, and given the moderate amounts, the offense was somewhat mitigated.

### b.     Defendant's Character and Background

Defendant was thirty-eight years old and had a serious prior record, as discussed above. However, the record arose largely from a serious alcohol problem, which defendant had taken steps to address. Defendant spent about ten months in an in-patient treatment facility prior to commencing his current state sentence and completed several months of treatment in state prison. I received letters from defendant's counselor, who indicated that

8

defendant made good progress. Defendant also had mental health issues and was at the time of sentencing taking anti-depressant medication.

Defendant was divorced and had no children. His current girlfriend made positive statements and indicated that she planned to marry him upon his release. I also received positive letters from a friend, defendant's mother, and an acquaintance from the treatment facility. Defendant's girlfriend and mother made every court appearance, demonstrating that defendant had strong support in the community.

Finally, in his allocution defendant expressed genuine remorse for his conduct and demonstrated insight into his substance abuse problems, which gave me some confidence that he was on the right path. Defendant was a high school graduate and had some employment history, which led me to believe that if he could defeat his alcohol problem he could be a productive member of society.

### c. Purposes of Sentencing

I found that there was a need for some confinement to promote respect for law and deter others. However, if defendant remained sober, he was less likely to re-offend and presented no danger to the public. He clearly had correctional treatment needs, which I addressed via recommendations to the Bureau of Prisons ("BOP") and conditions of supervised release. He also owed $4400 in "buy money," which he had agreed to repay as a condition of supervised release. See United States v. Daddato, 996 F.2d 903, 905 (7th Cir. 1993).

9

### d. Imposition of Sentence

The guidelines called for a term of 18-24 months. I found a sentence at the low end sufficient but not greater than necessary to satisfy the purposes of sentencing. Any sentence below that range would unduly depreciate the seriousness of the offenses.

Therefore, I sentenced defendant to 18 months in prison on both counts to run concurrently. Considering the factors in 18 U.S.C. § 3584 and U.S.S.G. § 5G1.3(c), and given all of the circumstances, including defendant's cooperation, his positive personal qualities, and the effect of the federal indictment on the execution of his state sentence, I concluded that running the sentence concurrent with the state sentence he was serving, which was determinate and set to discharge in September 2007, would result in a sufficient total sentence. I recommend that defendant be placed as close to Milwaukee as possible to ensure continued family contact, and that he participate in any substance abuse treatment programs available. Upon release, I ordered that he serve a three year supervised release term on each count, with conditions including substance abuse and mental health treatment, and repayment of the buy money. Other conditions appear in the judgment.

Dated at Milwaukee, Wisconsin, this 1st day of November, 2006.

/s Lynn Adelman

_____
LYNN ADELMAN
District Judge

Case 2:06-cr-00024-LA   Filed 11/01/06   Page 10 of 10   Document 25